1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OCEAN SERVICES, LLC, a Washington limited liability company,<br><br>                    Plaintiff,<br><br>        v.<br><br>OMNI2MAX, INC., a California corporation,<br><br>                    Defendant. | CASE NO. 2:22-cv-01058-JHC<br><br>ORDER |
| OMNI2MAX, INC., a California Corporation,<br><br>        Counterclaimant/Third-Party Plaintiff,<br><br>v.<br><br>OCEAN SERVICES, LLC, a Washington limited liability company,<br><br>                    Counter-defendant,<br><br>STABBERT MARITIME, LLC, a Washington limited liability company, OCEAN GUARDIAN HOLDING, LLC, a Washington limited liability company,<br><br>                    Third-Party Defendants. | |

ORDER - 1

# I
## INTRODUCTION

This matter comes before the Court on Plaintiff Ocean Services, LLC's Motion for Summary Judgment (Dkt. # 23) and Defendant Omni2Max, Inc.'s Motion for Partial Summary Judgment (Dkt. # 25).[1]  The Court has considered: the materials filed in support of, and in opposition to, the motions, pertinent portions of the record, and the applicable law.  Being fully advised, the Court DENIES Ocean Services' motion for summary judgment and GRANTS Omni2Max's motion for partial summary judgment.

# II
## BACKGROUND

This case involves a contract dispute between Ocean Services, the owner of M/V OCEAN VALOR,[2] and Omni2Max, the charterer of the vessel.  Dkt. # 1 at 2 ¶ 7; Dkt. # 7 at 2 ¶ 7.  Ocean Services is a Washington limited liability company "tasked with developing business for the OCEAN VALOR" and is affiliated with Third-Party Defendants Stabbert Maritime, LLC and Ocean Guardian Holdings, LLC.  Dkt. # 23 at 2–3; Dkt. # 24-2 at 2.  Omni2Max is a defense contracting firm that provides government contract management.  *See* Dkt. # 7 at 11 ¶ 10; Dkt. # 23 at 2; Dkt. # 24-1 at 2.

On July 29, 2022, Ocean Services filed its complaint, seeking declaratory relief relating to Omni2Max's charter of the OCEAN VALOR, alleging that (1) Omni2Max owes charter fees and interest related to partially paid charter invoices and (2) Omni2Max has acted in bad faith. Dkt. # 1 at 3–5.  Ocean Services seeks attorney fees.  *Id.* at 6.

---

[1] Ocean Services is also Counter-Defendant and Omni2Max is Counterclaimant/Third-Party Plaintiff.  Ocean Services moves on behalf of itself and Third-Party Defendants Stabbert Maritime, LLC and Ocean Guardian Holding, LLC.
[2] "The OCEAN VALOR is a 260-foot-long ocean supply vessel operated by Ocean Services under a bareboat charter."  Dkt. # 23 at 3.  In admiralty law, Ocean Services is the "disponent owner" of the vessel.  *Id.* at 3 n.1.

Omni2Max filed its answer, counterclaims, and third-party complaint on October 11, 2022, alleging: breach of contract and breach of good faith and fair dealing against Ocean Services and M/V OCEAN VALOR; unseaworthiness against Third-Party Defendants and M/V OCEAN VALOR; and promissory estoppel, quasi contract, ratification, fraudulent inducement, negligent misrepresentation (affirmative misstatement), negligent misrepresentation (failure to disclose), and declaratory relief against Ocean Services and Third-Party Defendants. Dkt. # 7 at 18–27. Omni2Max also moves for attorney fees. *Id.* at 28.

A.    Ocean Services and Omni2Max Pursue Government Contracts

The parties do not dispute the following facts. Over the years, Ocean Services and Omni2Max have worked together to vie for government maritime contracts. Dkt. # 23 at 3; Dkt. # 25 at 2, 4. Omni2Max served as the "prime contractor" of these bids because of its "secret" security clearance classification and relevant experience, while Ocean Services offered its maritime experience and the requisite vessels. Dkt. # 25 at 2, 4; *see* Dkt. # 23 at 15, 22. The parties failed to procure a contract on their first two attempts. Dkt. # 23 at 3–4; Dkt. # 25 at 3–4. After the loss of a second contract opportunity, the parties lodged a "protest" with the U.S. Government Accountability office ("GAO"). Dkt. # 23 at 3; *see* Dkt. # 25 at 5. In response, the GAO clarified that the two bids failed because the parties had not shown that Omni2Max had "an irrevocable, legally enforceable right to purchase, charter or lease the vessel" proposed for use in the bids. Dkt. # 23 at 3–4; *see* Dkt. # 25 at 5.

Omni2Max then asked what evidence was necessary to demonstrate its right to use a vessel. Dkt. # 23 at 4; *see* Dkt. # 25 at 5. In January 2021, the GAO responded:

> Offeror shall certify that it currently owns or is the bareboat or time charterer of the vessel(s). If the offeror is not the owner, *offeror shall provide with its proposal a copy of the executed bareboat or time charter agreement with the owner.* The bareboat or time charter must contain a period of performance ending no earlier than 5 and 1/2 years after the date of proposal submission. *The bareboat or time*

ORDER - 3

*charter may be contingent on award of the contract* pursuant to this solicitation and may be redacted to protect pricing.

Dkt. # 23 at 4 (emphasis added); *see* Dkt. # 25 at 5.

In December 2020, Military Sealift Command[3] ("MSC") issued Solicitation No. N32205-21-R-4112 for the award of a contract to use a civilian vessel for military operations. Dkt. # 25 at 3; *see* Dkt. # 23 at 4. Ocean Services recognized the OCEAN VALOR as an appropriate vessel and again approached Omni2Max because of its security clearance. Dkt. # 25 at 3–4; *see* Dkt. # 23 at 3–4.

In preparation for its bid, and in alignment with the GAO's guidance, Ocean Services drafted a BIMCO time charter party ("BIMCO charter")[4] and sent it to Omni2Max for approval in February 2021. Dkt. # 23 at 4; *see* Dkt. # 25 at 5. In that email, Ocean Services representative, Pete Tatro, offered to discuss the contract "briefly" and stated that there were "a couple of points" he wanted "to walk through" with Omni2Max. Dkt. # 23 at 4; Dkt. # 24-2 at 3 ¶ 9; *accord* Dkt. # 25 at 5. Omni2Max's Vice President, Michael Rin, did not discuss these points any further, but responded with a request to change the BIMCO charter's signature block. Dkt. # 23 at 5; Dkt. # 24-2 at 3 ¶ 10; *accord* Dkt. # 25 at 5. Ocean Services signed the charter on February 3, 2021, and Omni2Max signed it a day later. Dkt. # 23 at 5; Dkt. # 1-1 at 4; Dkt. # 25 at 6.

Ocean Services then drafted much of the MSC contract proposal, with Omni2Max contributing a two-paragraph portion about its role as a government contractor. Dkt. # 25 at 5;

---

[3] Military Sealift Command is the "provider of ocean transportation to the Department of Defense. The Command operates approximately 125 civilian-crewed ships that replenish U.S. Navy ships, conduct specialized missions ,strategically preposition combat cargo at sea around the world and move military cargo and supplies[.]" *About MSC*, Military Sealift Command (last visited Nov. 20, 2023), http://www.sealiftcommand.com/about-msc/.

[4] BIMCO stands for the "Baltic and International Maritime Council." This organization issues industry-standard pre-printed maritime contracts. Dkt. # 23 at 4 n.3.

ORDER - 4

Dkt. # 25-22 at 26–28; *see* Dkt. # 25-24 at 3.  Omni2Max submitted the contract proposal, the executed BIMCO charter, and Omni2Max's security clearance verification to MSC on February 6, 2021.  Dkt. # 23 at 6; Dkt. # 25 at 6.

At the end of March 2021, MSC notified Omni2Max that its proposal was "within the competitive range."  Dkt. # 25 at 6; *see* Dkt. # 23 at 6–7.  Ocean Services then provided Omni2Max with additional documents to finalize the proposal.  Dkt. # 25 at 6; *see* Dkt. # 23 at 6–7.  In early April 2021, MSC again notified Omni2Max that the proposal was within the competitive range; Ocean Services then lowered the daily charter hire price and Omni2Max re-submitted the revised proposal.  Dkt. # 25 at 6; *see* Dkt. # 23 at 6–7.  On May 17, 2021, MSC awarded Omni2Max the "Military Sealift Command Commercial Item Acquisition Special Time Charter" ("MSC contract").  Dkt. # 23 at 7; Dkt. # 25 at 6.  Following this contract award, the parties attempted to renegotiate the terms of their contractual relationship but were ultimately unsuccessful.  *See* Dkt. # 23 at 7; Dkt. # 25 at 6–7; Dkt. # 28 at 9.  At summary judgment, the parties dispute various issues, including Omni2Max's hiring of vessel coordinator, Hairston Hamby, and whether the terms of the BIMCO Charter or the MSC contract dictate the parties' relationship.  *See* Dkt. # 23 at 8–12; Dkt. # 28 at 11.

B.    The BIMCO Charter

The BIMCO charter establishes the vessel charter agreement between Ocean Services and Omni2Max; it was drafted to be "contingent upon award" of the MSC contract.  Dkt. # 1-1 at 1.  The BIMCO charter refers to the MSC contract four times.  *Id.* at 1–3.

Under the charter, Ocean Services was to deliver the OCEAN VALOR to the Port of San Diego on or before June 15, 2021, and, upon receipt of the vessel, Omni2Max would pay a lump sum of $392,000 at delivery.  *Id.*  The BIMCO charter establishes the per day charter hire price paid by Omni2Max to Ocean Services, requiring Ocean Services to issue an invoice to

Omni2Max every 30 days.  *Id.* at 1–3.  The charter expressly prohibits the offset or deduction of the invoice and accounts for the resolution of invoicing issues.  *Id.* at 3.  If Omni2Max

> reasonably believe[s] an incorrect invoice has been issued, [it] shall notify [Ocean Services] promptly, but in no event no later than the [invoice] due date, specifying the reason for disputing the invoice.  [Omni2Max] shall pay the undisputed portion of the invoice but shall be entitled to withhold payment of the disputed amount. [Ocean Services] shall be entitled to charge [9%] interest . . . on such disputed amounts where resolved in favour of [Ocean Services]. . . . Should [Omni2Max's] claim be valid, a corrected invoice shall be issued by [Ocean Services].

*Id.* at 12.

The BIMCO charter outlines the services provided by each party.  For example, Ocean Services is responsible for (1) all provisions, wages, and other expenses for the vessel's crew; (2) the maintenance and repair of the vessel's hull, machinery, and equipment; and (3) insurance and moorage expenses.  *Id.* at 9.  In turn, Omni2Max is responsible for (1) fuel and water; (2) loading and discharging of cargoes; and (3) customs, duties, permits, and clearance expenses.  *Id.* at 9–10.

The BIMCO charter is governed by U.S. maritime law or, if it is "not a maritime contract under U.S. law," it is governed by the "laws of Washington."  *Id.* at 28.  Any dispute must be resolved in Seattle, Washington and the "substantially prevailing party shall recover its legal fees and litigation costs."  *Id.*  The BIMCO charter also contains an integration clause, stating that it "is the entire agreement of the Parties, which supersedes all previous written or oral understandings and which may not be modified except by a written amendment signed by both Parties."  *Id.* at 30.

C.    The MSC Contract

The MSC contract governs the terms of the government maritime contract between MSC and Omni2Max.  *See* Dkt. # 30-14.  For example, it lists the July 15, 2021 as the delivery date of the OCEAN VALOR and states that Ocean Services is the vessel owner.  *Id.* at 4, 18–19.  The

MSC contract sets a fixed daily hire rate, paid by MSC to Omni2Max, and other price elements;
it also includes certain specifications relating to the vessel, crew, cargo, and fuel capacity. *Id.* at
20–29. Additionally, the MSC contract enumerates certain contract terms, including inspection,
excusable delay, and invoicing provisions. *Id.* at 87–150.

## III
### DISCUSSION

Ocean Services moves for summary judgment, seeking a declaration from the Court "that
the [BIMCO] charter governs the relationship between the parties and that Ocean Services has no
obligation to pay for Omni2Max's unilaterally imposed Vessel Coordinator." Dkt. # 23 at 2.
Ocean Services contends that: (1) the BIMCO charter is fully integrated and governs the
relationship between the parties; (2) Omni2Max may not unilaterally amend this valid contract;
and (3) the MSC contract is not incorporated by reference into the BIMCO charter. *Id.* at 13–20.

Omni2Max opposes and cross-moves for partial summary judgment, seeking a
declaratory judgment that "Ocean Services is bound to perform according to the MSC contract
for the remainder of the life of the contract[.]" Omni2Max contends that: (1) Ocean Services is
subject to the MSC contract under the theory of incorporation by reference; and (2) Ocean
Services must perform the MSC contract based on the parties' express agreements, statements,
and actions. Dkt. # 25 at 10–13. In the alternative, Omni2Max maintains that Ocean Services is
estopped from denying its obligations under the MSC contract. *Id.* at 11; Dkt. # 28 at 20–24.

A.     Summary Judgment Standard

Summary judgment is appropriate if the evidence viewed in the light most favorable to
the non-moving party shows "that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it might affect the outcome of the case.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248–49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party does not bear the ultimate burden of persuasion at trial, it can show the lack of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When cross motions are at issue, the Court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006); *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) ("[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." (quoting *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001))).

B.     Ocean Services' Motion for Summary Judgment

Ocean Services moves for a declaratory judgment that the BIMCO charter governs the relationship between the parties, alleging that Omni2Max has "consistently declined to pay

Ocean Services' invoices in full." Dkt. # 23 at 2, 10.  According to Ocean Services, their dispute began when Omni2Max hired Hamby as the OCEAN VALOR vessel coordinator. *Id.* at 7–9. Ocean Services maintains that Hamby does not provide any services contemplated under the BIMCO charter and Omni2Max's failure to pay its invoices in full—because of the associated costs of employing Hamby—breaches the terms of the charter. *Id.* at 7–8.  Ocean Services therefore contends that Omni2Max must pay its daily charter hire rates in full and moves the Court to "hold that the BIMCO charter party should be reformed so that [Omni2Max] is required to pay 97% of the charter hire rate in the original MSC [c]ontract[.]" *Id.* at 10, 15.  Omni2Max opposes and moves the Court to declare that Ocean Services is bound by the MSC contract; Omni2Max also contends that there are genuine disputes of material fact that preclude granting Ocean Services' motion.  *See* Dkt. # 28 at 17, 20.

       1.      Interpretation of Maritime Contracts and Parol Evidence

"[C]onstruction of a charter party, a maritime contract, is governed by maritime contract law." *Denali Seafoods, Inc. v. W. Pioneer, Inc.*, 492 F. Supp. 580, 582 (W.D. Wash. 1980) (citing *Kossick v . United Fruit Co.*, 365 U.S. 731 (1961)).[5]  Courts apply federal common law of contracts in the maritime context.  *See Clevo Co. v. Hecny Transp., Inc.*, 715 F.3d 1189, 1194 (9th Cir. 2013) (citing Restatement (Second) of Contracts).  Under federal common law, a contract

> must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations.  Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself.  Whenever possible, the plain language of the contract should be considered first.

---

[5] The parties agree that the BIMCO charter is a maritime contract and is governed by U.S. maritime law.  Dkt. # 1-1 at 28; *see* Dkt. # 23 at 13; Dkt. # 28 at 12.

*Flores v. Am. Seafoods Co.*, 335 F.3d 904, 910 (9th Cir. 2003) (citing *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210 (9th Cir.1999)).

"When two parties have made a contract and have expressed it in a writing to which they have both asserted as the complete and accurate integration of that contract," then "evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." *NextWave Marine Sys., Inc. v. M/V Nelida*, 488 F. Supp. 3d 1004, 1011 (D. Or. 2020) (summary judgment) *(*quoting *Har-Win, Inc. v. Consol. Grain & Barge Co.*, 794 F.2d 985, 987 (5th Cir. 1986))*; see Denali Seafoods*, 492 F. Supp. at 582. "Whether a maritime contract is integrated is a question of fact" and "the Court looks to 'all available evidence,' including the parties' extensive antecedent negotiations, to determine the question of integration." *NextWave Marine Sys., Inc. v. M/V Nelida*, 500 F. Supp. 3d 1162, 1169 (D. Or. 2020) (bench trial) (quoting *Battery S.S. Corp. v. Refineria Panama, S. A.*, 513 F.2d 735, 739 (2d Cir. 1975)).

Ocean Services contends that the BIMCO charter is fully integrated and Omni2Max must comply with its unambiguous terms. Dkt. # 23 at 2. Yet Ocean Services seeks to modify the BIMCO charter per day hire fees, maintaining that the charter does not reflect the parties' intent to grant Ocean Services a 97% share of the MSC revenue and Omni2Max the remaining 3%. *Id.* at 7, 15.

Omni2Max opposes, contending that Ocean Services' narrative regarding the negotiated revenue share reflects "an issue of fact to be determined." *See* Dkt. # 28-1 at 9; Dkt. # 28 at 9. Omni2Max highlights the contradictory nature of Ocean Services' position, noting that "while [Ocean Services] seeks to enforce the BIMCO as a fully integrated contract, in the same motion [it] asks the Court to enforce a term that is not expressed in the BIMCO." Dkt. # 28 at 17. In addition to the dispute over the BIMCO charter's pricing, Omni2Max highlights several other

invoicing issues.  For example, Omni2Max contends that in October 2022, Ocean Services began

invoicing Omni2Max 99.3% of the MSC Contract rate.  *Id.* at 10.  Because of these disputes of

fact surrounding the prices set in the BIMCO charter, Omni2Max maintains that the Court

should deny Ocean Services' summary judgment motion.[6]

       The Court agrees.  On the one hand, Ocean Services contends that the BIMCO charter is

fully integrated.  *See* Dkt. # 23 at 6.  On the other hand, Ocean Services seeks modification of the

BIMCO charter because it claims that the charter does not reflect the full extent of the parties'

pricing negotiations.  *Id.*  The Court interprets this inconsistent position as an implicit concession

that the BIMCO charter has missing or ambiguous terms.  *See DeForge Mar. Towing, LLC v.*

*Alaska Logistics, LLC*, 591 F. Supp. 3d 939, 948 (W.D. Wash. 2022) ("Only if the language is

ambiguous—reasonably susceptible to more than one interpretation—should a court examine

extrinsic evidence and look beyond the written language of the contract" to determine the intent

of the parties.").

       Whether a maritime contract is integrated is a question of fact that should be based on all

available evidence.  *NextWave*, 488 F. Supp. 3d 1004, 1011–12.  The introduction of extrinsic

evidence is therefore "a fact issue concerning the parties' intent that generally precludes

summary judgment."  *DeForge*, 591 F. Supp. 3d at 948.  Although the BIMCO charter contains

an integration clause, Ocean Services' position on the 97%-3% fee split casts doubt on the

charter's integration.  The Court must then look to all evidence "including the parties' previous

negotiations to determine the question of integration."  *NextWave*, 500 F. Supp. 3d at 1169.  The

Court concludes that there are genuinely disputed fact issues as to whether: (1) the BIMCO

---

[6] Omni2Max raises additional factual disputes that it contends further complicate the Court's
ability to resolve Ocean Services' claims at summary judgment, such as (1) issues related to Omni2Max's
assent to the BIMCO charter and (2) the hiring of vessel coordinator Hamby. Dkt. # 28 at 10–15; *see*
Dkt. ## 29-23, 29-25, 29-26, 29-27, 29-30, 29-31.

charter is a fully integrated charter and (2) what the parties intended the fee arrangement to be under the BIMCO charter.  For these reasons, the Court DENIES Ocean Services' motion for summary judgment.  *See* Dkt. # 23.

C.      Omni2Max's Motion for Partial Summary Judgment

Omni2Max moves the Court for partial summary judgment, seeking a declaratory judgment that Ocean Services is bound by the terms of the MSC contract because the parties "expressly contemplated Ocean Services performing all the technical obligations under the MSC Contract" and "incorporated by reference the MSC Contract into the BIMCO [charter]."  Dkt. # 25 at 3.  In the alternative, Omni2Max says that "Ocean Services is estopped from denying that it is bound to perform to the MSC Contract given its express representations and actions in teaming with Omni2Max to win the award of the MSC Contract."  Dkt. # 25 at 3.  Ocean Services opposes, responding that neither the theory of incorporation by reference nor estoppel supports Omni2Max's motion.  Dkt. # 26 at 2.

1.      Incorporation of the MSC Contract by Reference

In its motion, Omni2Max contends that "Ocean Services should be held to the technical performance of the MSC Contract, even though it is not a signatory to that agreement" because of "the parties' clear and unequivocal incorporation by reference of that agreement into the BIMCO charter."  Dkt. # 25 at 12.  Ocean Services responds that "there was no incorporation by reference of the entire MSC contract and instead the BIMCO Charter Party was drafted to be 'close' to the MSC Contract on certain subjects to allow it to be submitted as part of the response to the government."  Dkt. # 26 at 6.  Ocean Services also maintains that if the Court were to incorporate the MSC contract by reference, it should only do so in a limited fashion because in "the case of subcontracts, as in other cases of express agreements in writing, a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their

agreement only for the purpose specified." Dkt. # 26 at 5 (quoting *Guerini Stone Co. v. P. J. Carlin Constr. Co.*, 240 U.S. 264, 277 (1916)).

Because this is an admiralty case, the Court applies general maritime law and the federal common law of contracts.  *See NextWave*, 488 F. Supp. at 1010.  Under these principles, "where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together."  *One Beacon Ins. Co. v. Crowley Marine Services, Inc.*, 648 F.3d 258, 267 (5th Cir. 2011) (citing 11 Williston on Contracts § 30:25 (4th ed. 1999)).  "A separate document will become part of the contract where the contract makes 'clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt.'"  *Id.* at 268 (quoting 11 Williston, *supra*, § 30:25).  "Terms incorporated by reference will be valid so long as it is 'clear that the parties to the agreement had knowledge of and assented to the incorporated terms.'"  *Id.* (quoting 11 Williston, *supra*, § 30:25).  "Notice of incorporated terms is reasonable where, under the particular facts of the case, '[a] reasonably prudent person should have seen' them."  *Id.* (quoting *Coastal Iron Works, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 582 (5th Cir. 1986).

The BIMCO charter contains four references to the MSC contract:

- Period of Hire (Box 9):

    Five and one-half years[.] To [fulfill] *MSC solicitation N32205-21-R-4112 contract* base & option terms plus up to 183 days as may be needed per *FAR 52.217-18*.

Dkt. #1-1 at 1 (emphasis added).

- Early Termination of Charter (Box 13):

    Can be terminated if base year or any further option years are terminated per *MSC contract terms in Solicitation 32205-21-R-4112*.

Dkt. # 1-1 at 1 (emphasis added).

- Extension Hire (if agreed, state rate) (Box 21):

  Rate per box 20[.]  To fulfill *FAR requirements 52.217-[1]8*.

Dkt. # 1-1 at 2 (emphasis added).

- Additional Clauses Covering Special Provisions (Box 34):

  B. This Charter Party is contingent upon award to *Charterers of Military Sealift Command (MSC) Solicitation/Contract N32202-21-R-4112*.  Once written verification of award is received, this Charter Party shall be in effect and applicable.

  C. If Charterers are awarded the aforesaid *Solicitation/Contract by MSC*, it is acknowledged and agreed by the Parties hereto that pursuant to the said *Solicitation/Contract MSC* will have the right to purchase the Vessel by giving written notice of the same at least thirty (30) days in advance of expiration of then current charter term, i.e. base term or any optional year term.

Dkt. # 1-1 at 3 (emphasis added).

These references and the facts surrounding Ocean Services' participation in the bid for the MSC contract compel the incorporation of the MSC contract into the BIMCO charter.  *See One Beacon*, 648 F.3d at 267.  Indeed, the plain language of the BIMCO charter states that its execution depends on the MSC contract, and it may be terminated or extended if the MSC contract is either canceled early or extended.  Dkt. # 1-1 at 1–3.  The parties do not dispute that they entered into the BIMCO charter because they sought the MSC contract.  Dkt. # 23 at 3–7; Dkt. # 25 at 5–7, with Ocean Services drafting both the BIMCO charter and most of the MSC contract.  *One Beacon*, 648 F.3d at 267; *see* Dkt. # 23 at 4; Dkt. # 25 at 5; *accord* Dkt. # 25-22 at 26–28; Dkt. # 25-24 at 3.

Further, although Ocean Services says that, in the alternative, the MSC contract should be incorporated only for a limited "particular purpose," the Court disagrees.  Because the BIMCO charter's terms hinge on the MSC contract's execution, and the parties do not dispute that

Oceans Services had notice and sophisticated knowledge of its terms, the MSC contract is not merely an "extraneous writing for a particular purpose" and its limited incorporation would be incorrect. *See Guerini*, 240 U.S. at 277–78.[7]

The Court thus incorporates the MSC contract into the BIMCO charter, allowing both instruments to be construed together and declares that Ocean Services is bound by the terms of the MSC Contract. To the extent there is a conflict between the terms of these two contractual agreements, the Court does not make any determinations as to which terms and conditions should control. Similarly, the Court does not draw any conclusions as to sufficiency of the parties' contractual performance.[8] Accordingly, the Court GRANTS Omni2Max's Motion for Partial Summary Judgment.

### III
#### CONCLUSION

For these reasons, the Court DENIES Ocean Services' motion for summary judgment (Dkt. # 23) and GRANTS Omni2Max's motion for partial summary judgment (Dkt. # 25).

Dated this 21st day of November, 2023.

John H. Chun
United States District Judge

---

[7] Omni2Max makes the alternative argument that Ocean Services should be bound to the terms of the MSC contract under the theory of estoppel. Dkt. # 25 at 14–16. Because the Court incorporates the MSC contract by reference, it does not reach the merits of this claim.

[8] For example, Omni2Max claims that Ocean Services avoided its responsibilities under the MSC Contract when it charged Omni2Max the daily charter fee under the BIMCO while the OCEAN VALOR was being repaired for engine malfunctions. Dkt. # 25 at 16. According to Omni2Max, Ocean Services also "continues to threaten to use the BIMCO to its advantage and to attempt to hold Omni2Max responsible under the BIMCO for any positions taken by the MSC." *Id.* at 10. The Court will not resolve these disputes at summary judgment.